THOMAS et al. vs. HINKLE.

1. BILL OF EXCEPTIONS: *When sufficient.*

When a bill of exceptions does not show on its face that it contains all the evidence, but contains expressions from which it may be inferred that it was intended to do so, this is sufficient where no objection to it on that account is made in the supreme court.

2. DAMAGES: *Good faith of defendant no defense against actual.*

For the purpose of actual and not vindictive damage, the good faith and honest intentions of a county clerk in sending a false abstract of the votes of an election to the secretary of state, is no protection to him or the sureties on his official bond for such breach of his official duty.

3. EVIDENCE: *Judgment.*

A judgment is evidence of nothing, in a subsequent action between different parties, except that it had been rendered.

4. ELECTION RETURNS: *Abstracting to secretary of state.*

Where only part of the returns of an election sent to the county clerk from the different precincts are certified by the judges of election, the omission of the uncertified returns in the clerk's abstract of the vote of the county, to the secretary of state, does not make him guilty of sending a false abstract.

APPEAL from *Conway* Circuit Court.

Hon. T. W. POUND, Circuit Judge.

*Fletcher, Clark & Williams,* for appellee.

EAKIN, J. This case was brought here with a supersedeas, and having been reached upon the call of the docket, the appellant failed to prosecute his appeal. It has been submitted on appellee's motion, and we have looked through the transcript to see if there be any error of which the court should take notice.

It appears from the record, that in 1872 appellant, D. H. Thomas, was county clerk of Conway county, and the other appellants were sureties on his official bond for the faithful discharge of his duties. At the general election, which took place in November of that year, the poll-books from all the township precincts, thirteen in number, were brought into the clerk's office. They all contained what seemed to be abstracts of the votes cast, at the particular precinct, for the different candidates for office; but only one of them was certified by the judges of election to be correct, or had attached to them any certificate whatever of the judges or clerks, save the oaths of office. The clerk, acting through his deputies, made a canvass of the returns, rejecting all except the one which was certified, and sent an abstract to the secretary of state, by which it appeared that one William Kearney had been elected county clerk. He received his commission thereon and held the office until some time in November, 1874. Four days after the first abstract was forwarded, the clerk, by deputy, and to satisfy " outside parties," made another, including all the poll-books and supposed returns from all the precincts. Whether this actually reached the secretary of state or not, does not appear; nor is it important to inquire. The first had done its office. The last was unauthorized and nugatory.

The last showed, however, and it seems on all parts conceded, that the appellee, Hinkle, had been really elected county clerk by a large majority of the electors of the county. He brought suit for the office against Kearney, and obtained judgment for that and the mesne fees and emoluments. Execution isued and was returned *nulla bona.* He then brought this suit, against Thomas and his sureties, to obtain damages for breach of the official bond by the false return to the secretary of state, alleging the loss of

Thomas et al. vs. Hinkle.

fees and emoluments, and, as special damage, his expenses in recovering the office.  As his recovery in this case, however, did not include any such special loss, this branch of the subject need not be further noticed.

3. BILL OF EXCEPTIONS: When sufficient.  Upon the trial, the plaintiff was permitted, against the objection of defendants, to introduce the complaint, summons and judgment against Kearney in the former suit. There was other evidence, as above stated, together with sufficient evidence of the value of the fees and emoluments during the time that Hinkle was deprived of their enjoyment.  The bill of exceptions does not show, upon its face, that it embodies the whole of the evidence upon either side, but there are expressions from which it may be inferred that it was intended to do so.  This is sufficient where no objection to the bill of exceptions on that account is made here.

The court instructed the jury for the plaintiff, in effect:

1.  That if it appeared, from the returns made by the judges to the clerk's office, that the plaintiff received a plurality of the votes of the electors of the county, and the clerk made a different return, whereby the plaintiff lost the office, defendants were liable.

2.  That, for the purpose of recovering actual damage, the intent with which such return was made was immaterial.

3-4.  That defendants are bound by the acts of a deputy or one who had access to the office and was allowed to act as a deputy.

5.  That the record of the suit and judgment against Kearney was *conclusive* evidence against defendants, that plaintiff was elected to the office, and also *prima facie* evidence that the said return to the secretary of state was false.

For the defendant the court refused to instruct conversely to any of the above propositions. It did instruct the jury that, by the law then in force, the judges of election were required to certify, under their hands, the number of votes given to each person, and the office for which such votes were given, which should be attested by the clerks; but added, of its own motion, and against defendant's objection, "that after the county clerk received and acted upon the returns that were not so certified, said returns, after being so acted upon, are to be treated as legal returns."

Other instructions relate to good faith, and to damages, and need not be noticed in the decision of this case. It may be said of them, in passing, that they correctly state the law to be, that for the purpose of actual, and not vindictive damage, the good faith or honest intentions of the clerk, afford no protection to him or his sureties for breaches of official duty.

2 DAMAGES: Good faith of defendant no defense against actual,

There was a verdict for plaintiff for nearly $1,000, being amount of actual fees and emoluments lost, after deducting the hire of a deputy and with 6 per cent. interest added. A motion for a new trial was overruled, which reserves the points we shall notice, with others which may be passed over as involved in what has been said. The defendants appealed.

It is difficult to perceive any sound principle upon which the complaint and judgment in the former suit against Kearney could be admitted as evidence in a suit against these defendants for any other purpose than to show the fact that such a judgment had been obtained, and that the plaintiff was, by virtue of such judgment, or had been, in fact, the clerk. That suit was between different parties, and involved different issues from this. These defendants

2. EVIDENCE Judgment.

had no day in court in that suit. The issue there was, who was in fact elected? and, in determining that, the court could, and perhaps did, go behind the returns made to the clerk's office. The issue here is, did the clerk return to the secretary of state a false abstract of the returns made to his office? The judgment, based upon the actual votes cast throughout the county, which the court had the means of ascertaining, may well consist with the truth of the abstract, made by the clerk, of the returns made to him by the judges of the townships. Suppose, for instance, there had been false returns from the judges, or none, to the clerk's office, the plaintiff might, nevertheless, on proper proof, have recovered the office; but such recovery would not be even *prima facie* proof that the clerk had not truly abstracted and forwarded to the secretary of state the returns sent to him. The court certainly erred in instructing the jury that it would be evidence to that effect.

It becomes necessary to look deeper and see if there was any other proof that the clerk made a false return to the secretary of state; for if there be such clear proof of that as to have justified the verdict, the error in the instruction would be harmless, and the judgment would be permitted to stand.

The law then in force, after providing for the due appointment of judges and clerks at the different precincts, and for the proper conduct of the election, required the judges, at the closing of the polls, to sign the poll-books, and the clerks to attest their signatures. (*Gantt's Digest, sec. 2338.*) This poll-book was required to contain the names of all the voters, with the number of them estimated and set down at the foot. No such poll-books appear in evidence in this case.

Upon counting the ballots the clerks were required to

Thomas et al. vs. Hinkle.

enter, on a list or poll-book, in separate columns, under the respective names of the persons voted for, the number of votes given for each person, and also, to write out, in a legible hand, on said list or poll-book, the number of votes given to each person, and the office for which such votes were given, and to attest the same. *Sec. 2332.*

After the examination of the ballots, the votes for each person were to be enumerated, under the inspection of the judges, and set down at the foot of the column on the list or poll-book, and to be publicly proclaimed to the people present. *Sec. 2336.*

And then the judges were required to *certify, under their hands,* the number of votes given for each person, with the office for which they were given, and the clerks were required to attest the certificate. *Sec. 2337.*

After which, before dispersing, the judges were required to put one of the poll books under cover, seal the same, and direct it to the county clerk (*Sec. 2338*), which was to be carried and delivered to said clerk by one of the judges, within three days afterwards. *Sec. 2339.*

Upon failure to do that, the clerk was required on the fourth day to dispatch a messenger to bring up the same, and to defer the comparison of the poll-books until the seventh day. (*Sec. 2340.*) But, without such failure, it was his duty on the fifth day after the election, or sooner if all the returns be in, " *to open and compare the several election returns which have been made to his office,* and make *abstracts of the votes given for the several candidates for each office,* and deposit the same in his office, there to remain." (*Sec. 2342.*) In doing this, it was expressly provided that " *informalities in the certificates of the judges and clerks, at any election * * * shall not be good cause for rejecting* the poll-book of said election district." (*Sec. 2344.*) Provision is then made for

forwarding copies of the abstract to the secretary of state. If the clerk should fail to do so for two days, he was made liable to heavy penalties. *Sec. 2349.*

The object of all election laws is the ascertainment of the *real will* of *real electors* by such general rules as will, in the end, and by their general operation, be most apt to accomplish that result. This is all that legislation can effect. It can not provide for the innumerable special circumstances which may from time to time occur, nor entrust discretionary powers to the vast array of inferior officers to whom the conduct of elections must be committed. The ultimate ascertainment of the real will of the electors, in disputed cases, must be left to the more guarded and more intelligent discretion of the courts, which may go behind formalities and ascertain the real facts. Hardships may sometimes arise from delays and the expenses of litigation, but these are inseparable from human institutions.

General laws are, as above indicated, directed to preserve the purity of elections in their general application, and, from their very nature, can not safely leave much to the discretion of ministerial or executive officers. It is easily conceivable how, under political excitement, the elector may find his only shield and safeguard in being able to say to all officers, "*ita lex scripta est.*" If extraordinary, or discretionary proceedings are required, it is better that an appeal be made to the courts.

It is equally obvious that those who conduct elections should be protected by obedience to the law, although in the particular case it may cause an injustice which the courts should rectify.

Whether or not the clerk, upon opening the sealed packages purporting to be returns from the judges, and finding them uncertified, should have regarded them as nullities

Thomas et al. vs. Hinkle.

and sent a messenger for proper returns, is not a question raised by the pleadings. The special breach upon which he and his sureties are charged is, that he falsely abstracted the returns in his office. The true questions are, were these papers *returns*, such as he was bound to notice? and, if not, had he, by receiving and opening them, estopped himself from denying that they were?

The court below instructed the jury to the effect that whether valid or not, the clerk was bound to abstract them, because he had received and acted upon them. No other *action* than opening them is shown by the evidence. They were sealed and the clerk could not know, until the packages were opened, whether they contained correct returns or waste paper. The instructions of the court in this regard were erroneous. There is no room for the doctrine of estoppel. The papers must stand or fall of themselves.

The certificates of the judges and the attestation of the clerks were certainly important. They are plainly essential to that general system of checks and safeguards by which the purity of elections is to be preserved. Can the imagination portray all the confusion and corruption which might flow in from a neglect of these certificates? They are positively required by the statute in some substantial shape.

Why should the legislature say that *informalities* should not be good cause for rejecting the poll-books, if the total want of any certificate whatever should nevertheless be matter of no consequence, if the clerk had once gotten into his office sealed packages from the judges? "*Expressio unius est exclusio alterius.*" It is as much as to say that the want of certificates will, of course, be good cause of rejection.

We find no sufficient proof of fraud or falsity in the

action of the clerk, to cure the error in instructions. A new trial should have been granted, and for error in refusing the same, reverse the judgment, and remand the cause for a new trial.