HOWARD VS. THE STATE.

| 34 | 433 |
| 62 | 491 |
| 34 | 433 |
| 90 | 573 |

1. CRIMINAL LAW: *Indictment: Good and bad counts: Verdict.*
   Where there are several counts in an indictment for the same offense, some good and some bad, and there is a verdict of guilty on the indictment, it will be referred to the good counts, and the bad will be no ground for arresting the judgment.

2. CRIMINAL PLEADING: *Indictment; varying counts.*
   It is no objection to an indictment that the different modes in, and means by which an offense is alleged to have been committed, are stated in several and distinct counts.

28

3. EVIDENCE: *Direct and circumstantial, distinguished.*

When the existence of any fact is attested by witnesses, as having come under the cognizance of their own senses, the evidence of the fact is said to be direct or positive; but when the existence of the principal fact is only inferred from one or more circumstances which have been established directly, the evidence is said to be circumstantial.

4. CRIMINAL LAW: *Intent, when implied.*

Every one is presumed to intend the natural consequences of his act; and though a specific intent may not exist in the mind, the law will imply an intent to produce the effect, when it is the natural and probable consequence of the act.

5. ADMISSIONS: *Jury not bound to believe all a party said.*

The jury are not bound to give equal weight to all the statements of a defendant admitted in evidence.


APPEAL from *Franklin* Circuit Court.

Hon. W. D. JACOWAY, Circuit Judge.

*Fielder*, for appellant.

*Henderson, Attorney General, contra.*


HARRISON, J. The appellant, James Howard, was indicted in the Franklin circuit court, for the murder of Mollie Howard, his wife; and he was convicted of murder in the first degree. He moved for a new trial, which was refused, and then in arrest of judgment, and the latter motion was likewise overruled.

The ground of the motion in arrest of judgment was: that the indictment did not charge the offense with sufficient certainty.

The indictment contained seven counts, or, in other words, alleged the offense to have been committed in so many different ways. In the first, the killing was alleged to have been by choking; in the second, by striking, beating, wounding and bruising with the fists; in the third, by

Howard vs. The State.

pulling down and kicking; in the fourth, by kicking; in the fifth, by striking and beating with a club; in the sixth, by choking, striking, beating, wounding and bruising with the fists—by kicking, and by striking and beating with a club; and in the seventh, in some way and manner, and by some means, instruments and weapons, to the jurors unknown.

The form in which the offense was charged, was the same in each count. The sixth count was as follows:

"And the grand jury aforesaid, in the name and by the authority aforesaid, on their oaths, do further accuse the said James Howard of the crime of murder, committed as follows, viz.: The said James Howard, on the eighteenth day of January, 1879, in the county of Franklin, in the state of Arkansas, willfully, deliberately, feloniously, of his malice aforethought, and with premeditation, did kill and murder one Mollie Howard, then and there being, by choking her, the said Mollie Howard; and then and there striking, beating, wounding and bruising her, the said Mollie Howard, with his fists; and by then and there kicking her, the said Mollie Howard, with his feet; and by then and there striking and beating her, the said Mollie Howard, with a certain club, which he, the said James Howard, in his hands, then and there held, with the felonious intent her, the said Mollie Howard, then and there, willfully, deliberately, feloniously, of his malice aforethought, and with premeditation, to kill and murder, contrary to the statute in such case made and provided, and against the peace and dignity of the state of Arkansas."

It is sufficient, the statute says, if the act or omission charged as the offense, is stated in the indictment with such a degree of certainty as to enable the court to pronounce judgment on conviction according to the right of the case;

and the statement of the acts constituting the offense be in ordinary and concise language, and in such a manner that a person of common understanding may know what is intended. *Gantt's Digest, secs. 1781, 1782, 1796.*

The count we have set out, though informally drawn, contains the averment of every ingredient of the crime of murder, and the acts constituting the offense charged were alleged with the requisite precision and certainty.

If it be conceded that the seventh count, because not setting forth the manner of the killing, and the means by which it was effected, was fatally defective, yet, where there are several counts in an indictment for the same offense, some of which are good, and some are bad, and there has been, as in this case, a general verdict of guilty on the indictment, the verdict will be referred to the good counts, and the bad are no ground for arresting the judgment. *3 Whar. Crim. Law, sec. 3047; Brown v. The State, 10 Ark., 607.*

It is not an objection that the different modes in, and means by, which the offense was alleged to have been committed, were stated in several and distinct counts. The counts were but a form of alleging the modes and means in the alternative, which, according to *sec. 1783, Gantt's Digest,* may be done. But one offense was charged. *Thompson v. The Commonwealth, 1 Met. (Ky.), 13.*

The grounds of the motion for a new trial were: that the court misinstructed the jury; that it refused to give them proper instructions, asked by the defendant; and that the verdict was against the evidence.

The proof was, that the defendant and his wife, the deceased, were, on the night of the sixteenth of January, 1879, at a party at the house of Joseph Page. The deceased had danced with a little boy, and was again on the floor

with a man named Robinson, when the defendant came in and took her by the hair and pulled her out of the room. They passed through a back room, making considerable noise, and after getting out of the house, a noise was heard at the wood-pile, a few feet from the door, as if they were falling over the wood, and the deceased was heard to say: "Oh, don't, Jim! I'll go." They continued on home, their house being about one hundred yards from Page's; and when they got there, the door was violently shut, and considerable racket was heard in the house; the deceased crying and screaming; and she was heard to say: " You are choking me to death!" or, " I am choking to death!" and afterwards heard groaning. She was up next morning, and prepared breakfast, but after that took her bed; and she died about four o'clock the following morning. Upon a *post mortem* examination by physicians, a bruise was found upon her upper lip; others, resembling finger-prints, upon her neck; a large one on the back, over the region of the kidneys; and another, about the size of the palm of the hand, over and about the back portion of the left lung and behind the heart; and the blood of the bruised parts was coagulated. The kidneys were found coagulated with blood and urine, and the back part of the right lung was bruised and congested, the left being badly congested, and it was red and hepatized.

The deceased presented the appearance of having been a healthy woman; and it was the opinion of the physicians that these injuries were produced by violence, and were the cause of her death.

The defendant was, in the afternoon of the day after the party, at Page's house, and he said to him and his wife: " When we have cats at our house," meaning, as the witness understood, broils, "we have cats right." He also said

that, had he known she answered him as she did at the party, she would not have done so again.

A club or stick, three, or three and a half feet long, and as large as a man's wrist, was found on the path from Page's house to the defendant's; and he told a witness that he picked up a stick at the wood-pile to frighten her home. but said he did not strike her with it; and another witness, that he took up the stick to scare her home; and in the conversation with this latter witness, said he hurt her only on the lip, hair and back, but did not hit her on the back.

The venue was proved as laid in the indictment.

The defendant asked the following instructions, which the court refused to give:

This case is one depending on circumstantial evidence, and the opinion of medical experts; and in such cases the jury must, in weighing the evidence, be governed by certain rules of law: First—the hypothesis of guilt of the offense charged in the indictment should flow naturally from the facts proven, and be consistent with them all.  Second— the evidence must be such as to exclude any reasonable hypothesis but that of the defendant's guilt of the identical offense imputed to him; or, in other words, the facts proved must all be consistent with and point to his guilt only, and must be inconsistent with his innocence.  If the evidence can be reconciled either with the theory of innocence or guilt, the law requires the jury to give the accused the benefit of the doubt, and to adopt the theory of innocence, and to acquit.

2. Circumstantial evidence is never sufficient to convict when it raises no more than a definite probability in favor of the theory of guilt, and is always insufficient when, assuming all to be proved which the evidence tends to

prove, some other hypothesis may be true; and the jury in this case must acquit the defendant, unless the evidence discloses to them a state of facts, fully established, which to a moral certainty actually excludes every reasonable hypothesis but that of guilt.

3. If the jury believe from the evidence that the defendant did chastise the deceased, used force and even violence; unless they are also satisfied that he inflicted the same with felonious intent to kill and murder, they can not convict.

4. If the jury believe from the evidence that the defendant, at a party, shortly before the death of the deceased, caught her around the shoulder, or neck and legs, and jerked her out of the house, carrying her several paces in that position; and he accidentally stumbled and fell, and thereby letting her fall on her back; and if they further believe from the evidence that such a fall may have produced the injuries which resulted in her death, they can not convict the defendant of the offense charged. If the proof raises such an hypothesis, it is their duty under the law to reconcile the case upon it, and to acquit.

5. If the jury consider any portion of the confessions or statements of the defendant, they must consider and weigh the whole of such confessions or statements; in other words, his confession or statement, if considered at all, must be considered as an entirety—the jury can not take a portion unfavorable to him, and exclude that which is favorable. They must either reject the whole or accept the whole evidence in the case.

This was not a case depending upon circumstantial evidence, as assumed in the first two of these instructions. There was direct evidence of the assault of the defendant upon the deceased—the principal fact in question.

When the existence of any fact is attested by witnesses, as having come under the cognizance of their senses, the evidence of the fact is said to be direct or positive; but when the existence of the principal fact is only inferred from one or more circumstances which have been established directly, the evidence is said to be circumstantial. *Best, on Presumptions, 246; 1 Green. Ev., 13.*

"Circumstantial evidence," says Mr. Burrill, "is composed of circumstances or relative facts bearing indirectly on the fact at issue, or which is sought to be proved, and requiring in its application to such facts a process of special inference leading to the conclusion denied." *Burr. Circum. Ev., 77.*

These instructions were, therefore, not applicable to the evidence before the jury, and were misleading.

Every one is presumed to intend the natural and probable consequence of his act, and though a specific intent may not exist in the mind, the law will imply an intent to produce the effect when it is the natural and probable consequence of the act; and in cases of homicide, malice is implied, when no considerable provocation appears, or when all the circumstances of the killing manifest an abandoned and wicked disposition.

The third, not distinguishing between a specific and an implied intent, but leaving the jury to understand from it, that a specific intent to kill must have existed in the defendant's mind when he committed the assault, was likewise bad. The court had already instructed, and correctly, with regard to the intent.

The fourth was inapplicable to the evidence, and abstract. Instead of the last, the court gave, against the objection of the defendant, the following:

The jury are instructed that, in considering the admis-

sions of the defendant, they are to take into consideration all he said in the same conversation, as well what he said in his own favor, as against him, and should compare the consistency of such admissions with the other testimony in the case, and by this means form their opinion of the weight to be given to such admissions.

If it was the meaning of that asked by the defendant, that the jury should give equal weight to all the statements of the defendant—and we can only so understand it—it was manifestly wrong. That given in lieu of it was correct.

The instructions asked by the defendant were properly refused.

The evidence fully sustained and warranted the verdict. Finding no error, the judgment is affirmed.