## CRAVENS *v.* STATE.

### Opinion delivered May 23, 1910.

1. LARCENY—INTENT.—Where one accused of larceny was found to be in possession of the property alleged to have been stolen, claiming to own it, the question of his guilt or innocence will depend upon whether such claim was made in bad faith or not. (Page 324.)

2. APPEAL AND ERROR—CONCLUSIVENESS OF VERDICT.—Where a verdict of conviction in a felony case is supported by substantial testimony, it will not be set aside on appeal for want of evidence. (Page 324.)

3. SAME—FUNCTION OF MOTION FOR NEW TRIAL.—Motions for new trial can not be used to bring upon the record matters which should appear in the bill of exceptions. (Page 325.)

4. NEW TRIAL—NEWLY DISCOVERED EVIDENCE—DISCRETION.—A motion for new trial for newly discovered evidence is addressed to the sound discretion of the court; and where the new evidence is merely cumulative, it will not be held an abuse of discretion to grant it. (Page 325.)

5. TRIAL—ARGUMENT OF ATTORNEY.—The prosecuting attorney in his argument in a felony case said: "I have seen defendants convicted on weaker testimony, and never knew but one to be acquitted on as strong testimony, and that man walked out of this court room a free man, released by a jury, and the people said they did not see how they did it." *Held,* not to be an improper argument. (Page 326.)

Appeal from Clay Circuit Court; *Frank Smith,* Judge; affirmed.

*L. Hunter* and *W. W. Bandy,* for appellant.

.·  ˙ The verdict is not supported by the evidence.  34 Ark. 632;
70 Ark. 385.  It is error for the court to charge the jury on
matters outside the record.  72 Ark. 139; 44 Wis. 282; 74 Ark.
210; *Id.* 256.  Why should the same rule not be applied to
prosecuting attorneys?

*Hal L. Norwood,* Attorney General, and *W. H. Rector,*
Assistant, for appellee.

The remarks of the prosecuting attorney were not prejudi-
cial.  Newly discovered evidence which is merely cumu-
lative is no ground for a new trial.  66 Ark. 523; 74 Ark. 377.
The acts constituting due diligence ˙must be specifically shown.
66 Ark. 314; 73 Ark. 528.  Motions for a new trial on the
ground of newly discovered evidence are addressed to the sound
discretion of the trial court, and unless that discretion has been
abused this court will not interfere.  34 Ark. 659; 41 Ark. 229.
It must appear that appellant could not have learned of the
additional evidence by the exercise of due diligence.  28 Ark. 121.

HART, J.  This case is brought to this court by appeal on
the part of the defendant, Deb Cravens, from a judgment of
conviction in the Clay Circuit Court for the Eastern District of
the offense of grand larceny, charged to have been committed
by stealing a cow.

Will Crittenden for the State testified that the defendant,
Deb Cravens, came to his house to purchase cattle and hogs,
and that, while there, he asked defendant if he knew who had
a stray cow.  The defendant at first replied that he did not,
but after studying a while said that some one had asked him
about a stray cow.  Crittenden gave defendant as good a de-
scription of the cow as he could.  After four or five days the
defendant came back with the description of the cow just as
witness had given it to him on a piece of paper, which was signed
by some one.  That defendant consulted with him about taking
the cow, saying that he had bought her from a man living down
near Rector.  Witness told defendant that the cow did not be-
long to him and that he did not know to whom she did belong.
That, after some hesitation, the defendant carried the cow away
with him.  That the cow was what witness called red speckled,
and her "other color dirty looking white."

E. P. Longley, for the State, testified that he was guardian for the Byrd children, minors; that among their property inventoried by him was a cow; that he would call the cow a spotted one, there being about as much red as white on her; that the cow was running out; that he inquired about her, and finally heard that the defendant, Deb Cravens, had a cow in his possession answering the description of the cow belonging to his wards; that he went to see Cravens and described the cow to him, when Cravens said: "I guess that cow is in my lot right now. You go look at her; and if she is yours, you can take her." Cravens was busy moving that day, and did not go back with witness. Langley found the cow in Cravens's lot and carried her home. He came up with Cravens, and he helped drive her a part of the way. The cow had been marked and dehorned. She was marked by one of her ears being cut sloping down from the head to the point, and the other sloping up from the head to the point. Witness could not say how much of either part was left. The thick part of the ear was left.

The defendant testified in his own behalf. He said that he had bought the cow from one Maury Keller down in the bottoms, and had driven her along the public highway to his home in town, where he kept her. He said that she jumped into his horse lot and hooked one of his colts, and for that reason he got one of his neighbors to dehorn her; that at the same time another of his neighbors marked her, she being unmarked at the time.

Other witnesses were introduced by the defendant who testified that they were present when he bought the cow. Other witnesses corroborated his statement about the cow being unmarked when he brought her home, and also about the marking and dehorning her.

In rebuttal the State introduced Ed Neely, who testified that defendant, after he was indicted for the larceny of the cow, said that he had done wrong in dehorning and remarking the cow. His brother, who was present, said that he understood the defendant to say the same thing about dehorning and remarking the cow, but that he might have been mistaken. That he and his brother, at the time, were riding in a wagon, which made a great deal of noise, and that defendant was on horseback alongside of the wagon.

The defendant denied this, and said: "I told them I was getting into a little trouble over the cow, and I guessed what the court would hold against me the hardest was for dehorning and marking her, but I thought she was mine then." He further stated that he did not tell them that he had remarked her. The State also adduced evidence tending to show that Maury Kellar was not in the country at the time the defendant claims to have purchased the cow from him. The defendant adduced other testimony which strongly corroborates his testimony, but it is not necessary to abstract it, for the principal contention of the defendant is that the testimony does not support the verdict. That is to say, he contends that the evidence adduced by the State, when considered in its strongest light, did not warrant the jury in finding him guilty of the larceny of the cow. While the evidence for the State is weak, we think it was sufficient to support the verdict. The defendant gave up the cow, and thereby admitted that she was the property of the prosecuting witness; but he claims to have purchased her, and this brings up the question of his good faith in that respect. The contention made by the defendant in this case is very similar to that made in the case of *Douglass* v. *State,* 91 Ark. 492, where a judgment of conviction was affirmed. In that case the court said: "When the stolen property is found in the possession of the accused, and he makes a distinct assertion of title and ownership thereto, it is evidence that he intended to convert the same to his own use, and to deprive the owner thereof. If he makes an explanation of his possession by claiming to be the owner thereof, then the question to be determined is whether such claim of ownership is made honestly and in good faith. If it is made honestly and in good faith, then no matter how mistaken the accused may be, he would not have that felonious intent from which larceny could be inferred. But, on the contrary, if the explanation of the possession and the claim of ownership of the property 'involve a falsely disputed identity or are based on fabricated testimony, then the inference of his guilt is strengthened,' and his complicity in the larceny is sufficiently established."

Counsel for defendant also claim that the cow was over 12 months old when she came into defendant's possession, and that she was not marked or branded. Therefore they urge that

she was not the subject of larceny. This defense is by virtue of section 1898 of Kirby's Digest, which provides that cattle, if over 12 months old, must be marked or branded; otherwise they are not the subject of larceny. It is sufficient answer to this contention to say that the evidence on this point is conflicting, and the jury by their verdict have found against the defendant on this question. As we have already said, even though the State's testimony is weak, we can not invade the province of the jury; and their verdict is binding upon us, if there is substantial evidence to support it.

Again, it is contended by counsel for the defendant that the court erred in not permitting him to introduce certain papers purported to have been executed by Maury Kellar, which would have tended to show that he was in the country at the time defendant claims to have purchased the cow from him. This testimony the defendant claims to have been offered by him after the prosecuting attorney had made his opening argument. We can not consider this alleged assignment of error. The bill of exceptions does not show that such testimony was offered to be introduced by the defendant. It is true that such appears to be the case from the motion for a new trial, but motions for new trials can not be used to bring into the record that which does not otherwise appear of record. It is the office of a bill of exceptions to bring upon the record matters which do not appear upon the judgment roll or record proper, and motions for new trials have never been used for that purpose. *Foohs* v. *Bilby, ante* p. 302; *Cox* v. *Cooley,* 88 Ark. 350. In the latter case the court said: "The motion for new trial can not be used, and has never been used, to incorporate anything into the record or any exceptions to anything done by the court. Its sole use is to assign errors already committed by the court, except for newly discovered evidence as provided in the sixth paragraph of section 6215, Kirby's Digest."

Counsel for the defendant also asks for a reversal because the court refused him a new trial for newly discovered evidence which tended to show that Maury Keller was in the country at the time defendant claimed to have bought the cow from him. This testimony was cumulative, and motions for a new trial for newly discovered evidence are addressed to the sound discretion of the court. We can not say that the court abused

its discretion in refusing to grant defendant's motion for a new trial on this account. *Ward* v. *State,* 85 Ark. 179.

It is also urged that the judgment should be reversed because N. A. Kellar, an uncle of Maury Kellar, was on the jury, which tried the defendant. The fact of his relationship to Maury Kellar did not disqualify him from serving as a juror to try Cravens; and if the defendant believed that Kellar was prejudiced against him, or if for any reason he did not wish him to sit on the jury that tried him, he should have exercised his right to peremptorily challenge him.

In his closing argument to the jury, the prosecuting attorney used the following language:

"I have seen defendants convicted on weaker testimony, and never knew but one to be acquitted on as strong testimony, and that man walked out of this court room a free man, released by a jury, and the people said they did not see how they did it." A majority of the court thinks the judgment should not be reversed on this account.

In the case of *Kansas City So. Ry. Co.* v. *Murphy,* 74 Ark. 253, this question was discussed at length, and most of our former decisions reviewed. In summing up the court said:

"However, a wide range of discretion must be allowed the circuit judges in dealing with the subject, for they can best determine at the time the effect of unwarranted argument; but that discretion is not an arbitrary one, but that sound judicial discretion, the exercise of which is a matter of review." In the interest of ending litigation a wide range must be given to the arguments of counsel; and much must be left to the good sense and sound judgment of the jury. A majority of the court think the remarks of the prosecuting attorney were merely the general expression of an opinion by him as to what would or would not meet the approval of all good citizens. Tested by this rule, the majority believe that no prejudice resulted to the defendant from the remarks of the prosecuting attorney, and his remarks present no ground for reversal.

The writer does not agree with this view. The usual admonition to the jury by the court precludes any one from talking to them about the case, and to do so is a grave contempt of court. It seems to me that the principal reason for giving this admonition is lost if the prosecuting attorney, who is a *quasi*

judicial officer, is permitted to tell the jury of the expressed disapproval by the citizens of the county of the verdict of the jury in another case tried in the same court under a state of facts stated by him to be no stronger than those in the case on trial. I believe that such language calls for a reversal for the same reason that a statement of facts not in evidence by an attorney calls for a reversal. That is to say, that it is a statement of a substantive fact not pertinent to the issues, rather than the general expression of opinion. This applies with especial force in a case like the present one where the testimony relied upon for a conviction is weak and barely sufficient to sustain the verdict.

The judgment is affirmed.

Mr. Justice WOOD concurs in the dissent expressed in the opinion.