PIXLEY *v.* STATE.

4232                                               155 S. W. 2d 710

Opinion delivered November 17, 1941.

*Walter L. Brown* and *T. O. Abbott,* for appellant.

*Jack Holt,* Attorney General, and *Jno. P. Streepey,* Assistant Attorney General, for appellee.

HOLT, J. Appellant, Lois Pixley, was charged by information with the crime of murder in the first degree, the allegation being: ''The said defendant on the 22d day of May, 1941, in Union county, Arkansas, did unlawfully, feloniously and willfully and with malice afore-

thought and with premeditation and deliberation kill and murder Mary Pixley by striking and beating the said Mary Pixley.''

Upon a trial the jury convicted her of voluntary manslaughter and assessed her punishment at five years in the penitentiary. She has appealed to this court seeking reversal on several grounds. We consider them in the order presented.

She first urges that she should not have been convicted of voluntary manslaughter for the reason that the evidence failed to show any intent on her part to kill Mary Pixley, and for the further reason that the means used in the killing were not calculated to produce death.

Section 2980 of Pope's Digest defines manslaughter generally as the ''unlawful killing of a human being without malice, express or implied, and without deliberation.'' The following section, § 2981, defines voluntary manslaughter as ''Manslaughter must be voluntary, upon a sudden heat of passion, caused by a provocation apparently sufficient to make the passion irresistible.''

The evidence on the record before us, stated in its most favorable light to the state, as we are required to do, reflects that the deceased, Mary Pixley, was the former wife of appellant's husband and that they had been divorced. Under the terms of the divorce decree, the deceased had been awarded the care and custody of minor children born of her marriage to appellant's present husband. Trouble had arisen between appellant and the deceased over the failure of appellant's husband to make payment promptly of certain monthly allowances ordered to be paid by him, to the deceased, for the support of the minor children, and appellant possessed a strong dislike for the deceased.

On the afternoon of May 22, 1941, appellant, being in the city of El Dorado, Arkansas, got in her automobile and (quoting from the testimony of Mildred Robertson) ''I drove around until I found her and I got out and gave her a good beating.'' After locating the deceased on the street, appellant parked her car some distance away,

walked up to the deceased and (according to the testimony of J. L. Boene, an eye-witness for the state) "as soon as she got to her, she caught her by the hair of the head and commenced pounding her in the face with her fists." He further testified that he was about 25 feet away. He heard appellant remark: "You have been bothering in my home for three years." The deceased made no attempt to run or to fight back, and during the beating "kinda" sank down or sat down before appellant stopped striking her and appellant was still holding her hair when she sank down. Deceased was bleeding at the nose and mouth. Appellant was striking the deceased with her fists and using no other weapon.

Travis Anglin testified that he saw a part of the fight; that he was in the house when it started and heard deceased screaming for help and (quoting from appellant's brief) "when witness saw the fight, deceased was on her knees and defendant had her by the hair of the head, and was hitting her; . . . Deceased remained at the scene thirty or forty minutes after the fight. Her left eye was swollen; her face was bloody."

Another witness, L. L. Combs, testified that he saw the fight from the beginning while sitting in his automobile a short distance away and (quoting from appellant's brief) "Mary Pixley (deceased) was coming across Wesson street from the direction of the school building; defendant was walking north, and when they met on the corner, defendant caught the deceased by the hair with her left hand and began hitting her with her right hand. Defendant hit deceased with her fist approximately forty times on the face and mouth and on the nose. 'Q. All over the head? A. No, sir. Not on the head, just on one side of the face.' Witness did not see the deceased make any attempt to fight back. Witness does not think deceased was looking at the defendant as she came along. Deceased had a purse and something in a paper sack in her hands. . . . Defendant struck deceased two or three times after she sat down on the ground."

Dr. Mayfield testified that he performed an autopsy on the body of deceased and found an intercranial hemor-

rhage or blood clot on the brain and that there was a small fracture of the skull on the right side and that this condition could have been caused from a blow of the fist. He further testified (quoting from appellant's brief): "The fracture can occur at the opposite side from where the blow is struck. The more blunt, the more likely the fracture will be away from the point of the blow. The sharper the instrument, the more likely it will be at the point of the blow."

And again quoting from appellant's brief, Dr. Berry Moore testified: "Witness could not say that the fists did not cause the bruises; the hemorrhage was caused from the bursting of the small veins beneath the membranes of the brain. The bleeding was extremely slow because she was conscious after the fight. . . . The fracture was discernible with the eye. It was about one and a half inches long. It was on the inside of the skull. The hemorrhage caused the death. The fracture was not serious. The hemorrhage was beneath the fracture on the right side."

Another eye-witness testified that appellant struck deceased with her fists from forty to fifty times, and that deceased was a frail and weak woman physically.

There was other testimony of a corroborative nature that we do not deem it necessary to abstract here.

It is our view that the testimony presented was ample to support the jury's verdict. From the evidence the jury was warranted in finding that appellant deliberately and with premeditation sought out the deceased and administered to her a most brutal beating, the deceased offering no resistance whatever. Appellant, while holding deceased by the hair, pounded her on the side of her head with her fist, administering some fifty blows, until Mary Pixley sank to the sidewalk, bloody and bleeding from the nose and mouth. Appellant not content with the punishment administered while Mary Pixley was standing, continued to strike her after she was down. The beating administered by appellant was so severe that a small fracture inside the skull resulted and a blood clot developed on the brain of deceased, resulting in her death the following morning. Appellant harbored a

strong dislike for the deceased, and the jury had the right to judge of appellant's intent by her actions and the result that followed.

Appellant can gain no comfort here from her contention that she could have had no intention to kill Mary Pixley for the reason that two able-bodied men watched the fatal encounter from beginning to end and made no effort to stop her criminal act. We need not stop here to attempt to analyze the strange and unnatural conduct of these two witnesses who made no effort to prevent appellant from beating an unresisting woman to death. The cold fact remains that appellant did beat Mary Pixley to death with her fist and, as we have indicated, the jury was warranted in finding that she intended the consequences of her acts.

To be guilty of voluntary manslaughter it was not necessary that appellant use a gun or any particular instrument. She might have killed the deceased by choking her to death, drowning her or by the use of many other methods. On the facts before us we think the jury was certainly warranted in finding that the means appellant did use were calculated to produce death.

In *Harris* v. *State,* 34 Ark. 469, this court said: "Where an act, in itself indifferent, becomes criminal if done with a particular intent, there the intent must be proved and found; but where the act is in itself unlawful, the proof of justification or excuse lies on the defendant, and, in failure thereof, the law implies a criminal intent.

"Every person is presumed to contemplate the ordinary and natural consequences of his own acts; therefore, when one man is found to have killed another, if the circumstances of the homicide do not of themselves show that it was not intended, but was accidental, it is to be presumed that the death of the deceased was designed by the slayer, and the burden of proof is on him to show that it was otherwise. Sections 13, 14, 3 Greenleaf on Evidence; *Howard* v. *State,* 34 Ark. 433. See, also, *Rosemond* v. *State,* 86 Ark. 160, 110 S. W. 229.

Appellant next complains because the court refused to grant her a new trial on the ground of misconduct of certain persons present in the courtroom during the trial,

which misconduct deprived appellant of that fair and impartial trial guaranteed under the Constitution. After a careful review of the record on this point, we cannot agree with this contention of appellant. The testimony is in conflict as to just what remarks were made by certain people in the courtroom and whether these remarks actually reached the ears of the jurors. The court heard testimony pro and con on this proposition. It is our view that the evidence does not show that any prejudice resulted to appellant's rights in this regard. No member of the jury was examined on this point by either side. As has been many times said by this court, trial judges must be given much latitude and discretion in conducting the trial of causes and unless it clearly appears that there has been an abuse of discretion resulting in a miscarriage of justice, this court will not interfere. See *Pendergrass v. State,* 157 Ark. 364, 248 S. W. 914; *Daniels v. State,* 186 Ark. 255, 53 S. W. 2d 231.

Finally appellant questions the action of the trial court in giving her instruction No. 8 after having modified same by striking out the words "or second degree or voluntary manslaughter," and that the court erred in refusing to give a certain unnumbered instruction requested by appellant.

The record in this case discloses that appellant at the trial did not object to the giving of any instructions by the court nor to the refusal of the court to give instructions asked by her, and no exceptions were preserved in the record. The rule is well settled on appeal that objections must be first raised at the trial to the giving, or to the refusal to give, an instruction, and an exception taken to the action of the court, and that exception carried forward into the motion for a new trial. It is not sufficient to bring it into the record for the first time in the motion for a new trial as appellant has attempted to do in the instant case. We so held in the recent case of *Butler v. State,* 198 Ark. 514, 129 S. W. 2d 226, and in *Kirkwood v. State,* 199 Ark. 879, 136 S. W. 2d 174. See, also, *Cravens v. State,* 95 Ark. 321, 128 S. W. 1037, and *Harrelson v. Eureka Springs Elec. Co.,* 121 Ark. 269, 181 S. W. 922.

Finding no error, the judgment is affirmed.