J. D. BEVILLS *v.* STATE of Arkansas

CR 78-136                                575 S.W. 2d 443

Opinion delivered January 15, 1979

*Vincent E. Skillman, Jr.,* of *Skillman & Durrett,* for appellant.

*Bill Clinton,* Atty. Gen., by *Joyce Williams Warren,* Asst. Atty. Gen., for appellee.

JOHN I. PURTLE, Justice. Appellant J. D. Bevills was charged with murder in the second degree in the Circuit Court of Cross County, Arkansas. A jury trial on February 14, 1978, resulted in appellant being convicted of the reduced charge of manslaughter and fixed his punishment at a sentence of five (5) years' imprisonment in the Arkansas Department of Corrections.

At the close of all the evidence, the appellant moved for a directed verdict upon the grounds that there was insufficient evidence to allow the question to be presented to the jury. The question presented on appeal was whether the trial court erred in not granting appellant's motion for a directed verdict.

J. D. Bevills and Frances Bevills, husband and wife, had been residents of Wynne, Arkansas, for a considerable number of years. Sometime during the day on June 30, 1977, Frances Bevills left her home for the purpose of going to a beauty shop. She did not return to the home until July 4, 1977. During the time she was away from the home, she had apparently been consuming considerable amounts of intoxicating beverages. In fact, the evidence indicates that appellant had been partaking of same while he was at home waiting to hear from his wife. Mrs. Bevills spent the nights, while she was away from home, with neighbors. Mrs. Bevills was at the house of Sadie Mae and Dewey Spindle on July 3, 1977, and spent the night with the Swindles. Both Mr. and Mrs. Swindle were in the home of J. D. Bevills on the afternoon of July 4. During the day of the 4th, Mr. Bevills had been drinking. When the Swindles returned home, Mrs. Bevills stated she wanted them to carry her to her home. About 5:30 or 6:00 p.m., on the 4th of July, the Swindles drove Mrs. Bevills to the Bevills' home where they had left appellant a short time earlier. According to the Swindles, they drove up to the driveway of the Bevills' home and Mrs. Bevills got out of the car and walked up to the door, without

any problems. She opened the door and disappeared inside the Bevills home.

Both Mr. and Mrs. Swindle had stated that Mrs. Bevills was not bruised or battered in any manner and appeared to be in pretty good shape for someone who had just come out of a drinking bout.

The appellant testified that his wife had a drinking problem. He said she was a very good housekeeper and cook and stated he loved her. He testified that she left their home in Wynne about 11:00 o'clock on June the 30th and went uptown, not to return until the evening of Monday, July 4, 1977. He stated that he had been drinking pretty heavy on July the 4th as he had started about 10:00 a.m. In fact, he stated he was so "well loaded" that he couldn't say what time he went to bed on the night of July the 4th. Mr. Bevills stated that he didn't know when the deceased came home but he does remember when the decedent came in the house and woke him up. He thought it was between 6:00 and 9:00 p.m. on the 4th when his wife returned home. Appellant stated that he and the deceased had some words and it looked to him like she had been into it with somebody or something because she was bleeding along the cheeks. The next thing appellant remembers is waking up about 4:20 a.m. on the morning of July 5, 1977, and finding his wife on her knees at the south end of a couch. He felt she was praying until he touched her, or shook her shoulder, then she fell over into the floor. She was obviously dead at the time, and the neighbors, police, sheriff, and medical examiner were called.

Steven Marx of the State Medical Examiner's Office did an autopsy to determine the cause of death. He performed the autopsy on Frances Bevills on July 5, 1977. He found that her eyelids were bruised; she had bruises in the scalp and in the left temporal area above the ear; she had bruises in the scalp and the occipital area and midline, the back of the head; a bruise under the right eye; the entire bridge of the nose; bruises on both lips; lacerations on the underside of her lip; blood in her nose and mouth; two bruises on the left side of the chin; two bruises on the right side of the chin; bruises on both knees; and bruises on the left hip and left buttock. He further stated that the type of injuries he found were a result

of trauma and would be consistent with blows from the hand. Although he stated the injuries would be consistent with various other methods of inflicting the injury, he clearly stated that about all of them are consistent with blows from the fist. The injuries could have occurred any time within a 24-hour period prior to Mrs. Bevills' death. He also found high alcohol content in her blood. According to the medical examiner, the cause of death was hemorrhage on the surface of the brain and very high blood alcohol. He seemed to place emphasis on the subdural hematoma as a primary cause of death. The death certificate at the Bureau of Vital Statistics for the State of Arkansas lists the cause of death as (A) Subdural hematoma and (B) Trauma to the head.

Ark. Stat. Ann. § 41-1503 (Repl. 1977) provides:

"A person commits murder in the second degree if:

(a) . . .

(b) . . .

(c) with the purpose of causing serious physical injury to another person, he causes the death of any person."

The evidence in this case seems clearly strong enough to support a conviction of murder in the second degree. However, the appellant was convicted of the lesser included offense of manslaughter.

Circumstantial evidence may be sufficient to warrant the conviction of various different crimes, including manslaughter. In this particular case, Mr. and Mrs. Swindle observed the deceased enter the home of the appellant at 6:00 p.m. on July 4, 1977, at which time she was in pretty good shape considering she was recovering from a drinking spree. In any event, she had no visible bruises, cuts, abrasions, contusions, or other evidence of injury, and, in fact, was capable of walking up the driveway, without difficulty, opening the door and entering her home. Appellant admitted knowing that she came home sometime in the evening of July the 4th. There is no evidence of any nature that any other person was present in the Bevills' home between the time the deceased

entered the home and the time she was found, by appellant, the next morning when he discovered she was dead. The evidence, as found by the medical examiner, is consistent with the verdict reached by the jury.

Circumstantial evidence has been held sufficient to support a conviction of murder in the second degree in the case of *Thomas v. State,* 250 Ark. 504, 465 S.W. 2d 704 (1971).

Manslaughter has been defined in Ark. Stat. Ann. § 41-1504 (Repl. 1977). "A person commits manslaughter if: (a) . . . (b) . . . (c) he recklessly causes the death of another person; . . . . " Intent ot kill is not a necessary element to sustain a conviction for manslaughter.

In the case of *Pixley v. State,* 203 Ark. 42, 155 S.W. 2d 710 (1941), evidence from which the jury could have found that the defendant deliberately and with premeditation sought out deceased and administered to her a very severe beating causing a fracture inside the skull which resulted in a blood clot on the brain, thereby resulting in death the following morning, was held to sustain the conviction of manslaughter. See also the case of *Cook v. State,* 248 Ark. 332, 451 S.W. 2d 473 (1970) wherein the evidence indicated a crowd gathered on the sidewalk during which time the defendant was knocked down and that he arose with a knife in his hand and lunged at the crowd and shortly thereafter the deceased was found stabbed to death. This evidence was held sufficient to sustain a conviction of voluntary manslaughter.

From the evidence listed above and the cases cited herein, it is the opinion of the Court that the trial court did not err in refusing to grant appellant's motion for a directed verdict.

Affirmed.

We agree. HARRIS, C.J., and GEORGE ROSE SMITH and BYRD, JJ.