## DAVIS *v.* KELLY.

### Opinion delivered February 20, 1922.

1. CARRIERS—DUTY TO PASSENGER—INSTRUCTION.—While it is error to instruct the jury in effect that it is the duty of the railroad company to furnish a safe place to its passengers to alight from its train, instead of saying that it was its duty to exercise due care to that end, such error was not prejudicial where the undisputed evidence establishes liability for plaintiff's injuries, as where the railroad company negligently stopped its train 100 feet beyond the station platform at a dangerous place, and thereby caused plaintiff to fall and receive the injuries complained of.

2. CARRIERS—NEGLIGENCE TOWARD DEBARKING PASSENGERS.—Where a train was late and overran the platform, and a woman passenger weighing over 200 ponds protested against alighting at such place, but the brakeman assured her that she could alight safely and that he would assist her, and she stepped on the footstool, which was placed on slanting ground, so as to cause her to fall and sustain injuries, the carrier was liable.

3. CARRIERS—NEGLIGENCE—INSTRUCTION.—Where a passenger was injured in alighting from a train at a place beyond the station platform, the court did not err in refusing to instruct upon the theory that there was no failure to furnish proper stational facilities.

4. CARRIERS—FAILURE TO STOP AT PLATFORM.—The fact that a train is late affords a carrier no excuse for failure to discharge its duty to stop at the station platform, so that passengers may alight in safety.

5. EVIDENCE—OFFER OF COMPROMISE.—Where plaintiff wrote to the railroad company in regard to her personal injuries, and said "I prefer to settle this without a suit, and have instructed my lawyers to wait until I hear from you; otherwise suit will be entered for $500 damages," this letter was an offer of compromise, and not binding on plaintiff as to the amount of damages.

6. DAMAGES—PERSONAL INJURIES.—A verdict of $3,000 in favor of plaintiff for personal injuries was not excessive where her knee was inflamed, she suffered much pain, was unable to do her housework, limps slightly in walking, has trouble in going down steps and getting in a buggy, and where a doctor testifies that she was permanently injured and liable to have her knee dislocated.

Appeal from Monroe Circuit Court, *George W. Clark,* Judge; affirmed.

*Daniel Upthegrove* and *Lamb & Frierson,* for appellant.

1. Instruction numbered 1 given by the court was erroneous. This suit is not based upon a failure to furnish a safe place to alight but on the failure to stop at a platform. As to station facilities, it is the duty of a carrier to exercise ordinary care only. 96 Ark. 311; 65 *Id.* 255; 90 *Id.* 378; 115 S. W. 640; 149 Pac. 1126. It is bound only to the same kind of care in assisting passengers to enter a car. 85 Ark. 117; 48 *Id.* 491; 141 *Id.* 378. The Cantrell case, 37 Ark. 519, was a case of a passenger alighting from a moving train. There is a great distinction between such cases and such cases as passengers alighting from a train standing still. 118 Ark. 467.

The above instruction was further erroneous in that it singled out the evidence relating to the train being behind time and instructed the jury that that would not relieve the appellant from liability.

2. The court in its instruction numbered 5 returns to the error in instruction 1 and states that the material allegation of the complaint is that the defendant failed to furnish her a safe place to alight. "Safe" implies practically an insurance. A carrier is not liable as an insurer. Thompson on Negligence, § 2679; 115 S. W. 640; 99 Ark. 366; 119 *Id.* 392.

3. The verdict is excessive. 69 Ark. 402.

*Bogle & Sharp,* for appellee.

1. The court was right in giving instruction 1. It was based on the proof to the effect that the reason why

the train was not pulled back to the station was because it was behind time.

Appellee had the right to allege and prove that the proximate case of her injury was the failure to stop the train at the platform, and if she proved that by a preponderance of the evidence she was entitled to recover. 87 Ark. 582; 146 *Id.* 372. With respect to the degree of care, the case must stand or fall upon the question of whether or not the plaintiff was a passenger at the time she received the injury. If she was a passenger, ordinary care is not the test. 114 Ark. 56; 96 *Id.* 311.

2. The verdict is not excessive, 104 Ark. 528; 99 *Id.* 537; 121 *Id.* 351; 117 *Id.* 329; 126 *Id.* 377.

SMITH, J. Mrs. Kelly, the plaintiff below, was injured while alighting from one of appellant's trains, and has recovered a judgment to compensate that injury in the sum of $3,000, from which is this appeal. No objections were made to any testimony offered at the trial, and all the instructions requested by the railroad company were given. The errors assigned for the reversal of the judgment are that the court erred in giving instructions, and that the verdict is excessive.

Appellant insists that the case presents a question of a failure to furnish proper station facilities, and not one of negligence in the operation of trains. The court below was not of that opinion, but submitted the case on the theory that—if plaintiff's version of her injury were accepted as true—she was injured in the operation of a train, and the jury was told that the railroad would be liable for the consequences thereof, if the injury resulted from the failure of the railroad to exercise the high degree of care due a passenger in the operation of trains.

There would be no difficulty about this case but for the fact that, after giving instructions which, taken as a whole, correctly declared the law of the case, the court, of its own motion, gave an oral instruction reading as follows: "You are instructed that it was the duty of the defendant company to furnish the plaintiff, after she had

become a passenger on one of its trains, a safe place to alight therefrom, and the fact that the defendant's train may have been behind schedule would not relieve the defendant company from its duty, and if you find by a preponderance of the evidence that the defendant failed to furnish the plaintiff a safe place to alight from one of its trains, and that such failure was the proximate cause of such injury, if any, sustained by the plaintiff, then it will be your duty under the law to return a verdict for the plaintiff." To the giving of this instruction the special objection was made that "it makes the duty of furnishing a safe place apparently an absolute duty, instead of making it a test of what due care would require under the particular circumstances, and for the further reason that, in discussing the question of whether the train was behind schedule, it points out particular evidence and states its effect to the jury."

The first objection to this instruction must be conceded to be correct; but we have concluded the error in giving it does not call for the reversal of the judgment, for the reason that, in our opinion, the undisputed evidence establishes liability for the plaintiff's injury.

The undisputed testimony establishes the following facts: On the night of December 24, 1919, Mrs. Kelly purchased a ticket at Hunter for Hillman, and became a passenger on one of appellant's trains, which arrived at Hillman after midnight. The train was late and overran the platform provided for the use of passengers in entering and leaving trains a distance of from fifty to one hundred feet. There was some conflict in the testimony as to just what this distance was, but the testimony is undisputed that the train so far overran the platform that the platform was not available for the use of passengers. Mrs. Kelly was about forty-nine years old at the time of her injury, and weighed over two hundred pounds. When she arrived at the steps of the coach in which she was a passenger, she found the train had overrun the platform, and she expressed the fear that

she could not safely alight from the train. The brakeman was present, and had placed the foot-stool, carried by him, beneath the step of the car, and he assured Mrs. Kelly that she could alight safely, and that he would assist her in doing so. A Mrs. Jennie Hale was also a passenger at the time, and preceded Mrs. Kelly in leaving the car. Mrs. Hale testified that "the condition of the ground at the place we alighted from the train was rolling, or slanting, a considerable grade there, a good sized dump." Mrs. Hale was a younger and smaller woman, and, after getting off the train, she turned and called back, "Mrs. Kelly, don't come off there, you will kill yourself." Mrs. Kelly relied, however, on the brakeman's assurance of safety and his promise of assistance and made the attempt, in fact, she appeared to have had no alternative except to remain on the train. The brakeman admitted that Mrs. Kelly spoke of his being too small a man to assist a large lady like herself, but he told her that by doing the best he could he thought he could help her off all right. The brakeman admitted the foot-stool was not level, and for that reason he put his foot in the hole of the stool, and hung his lantern on his arm so he could use both hands in preventing Mrs. Kelly from falling. The only witness called by appellant who had anything to do with the operation of the train was the brakeman, and he testified the engine of the train was in control of an extra engineer, and that the train would have pulled up to the platform if he had given the necessary signal, but that he did not do so for the reason that the train was late. Mrs. Kelly swung down from the step of the car until her foot rested on the foot-stool, when she released her hold on the handles of the car, whereupon the foot-stool tilted, and she stumbled from the stool, thereby wrenching her knee and sustaining the injury for which she sues.

We think this testimony makes a case of liability, not that it is negligent to stop a train where there is no platform for the use of passengers, but because there

was a platform here which the passengers were not permitted to use. There may be no such thing as an absolutely safe place for passengers to enter and leave trains, and for this reason the court erred in telling the jury, in the oral instruction, that the railroad was under the duty of furnishing a safe place; but the undisputed testimony shows that within less than a hundred feet of the place used for debarking there was a much safer place than the one used. The platform was a permanent structure; it was level; and there was no danger of its tilting. Moreover, the undisputed testimony shows that the distance from the lower step of the car to the footstool was at least eight inches greater than the distance would have been from the lower step of the car to the platform. The use of the platform gave reasonable assurance of safety, and the only reason stated by the brakeman for not pulling the train up to it was that the train was already late.

As we have said, the court was not in error in refusing to submit the case upon the theory that the plaintiff's injury arose out of the company's failure to furnish proper stational facilities, the measure of which duty is to exercise ordinary care to furnish reasonably safe facilities. That duty had been discharged; the company had such facility but did not use it.

In the case of *Prescott & N. W. R. Co.* v. *Thomas,* 114 Ark. 56, the contention was made that ordinary care is the requirement with respect to a passenger getting on or off a train; but we there said: "But we have held otherwise in the case of *St. L. I. M. & S. R. Co.* v. *Woods,* 96 Ark. 311, where it was said: 'The higher degree of care is exacted only during the time in which the passenger has given himself wholly in charge of the carrier, while on the train or getting on or off, for then only is the passenger subjected to the peculiar hazards of that mode of travel against which the carrier must exercise the highest degree of skill and care."

We think, in the discharge of this high degree of care due Mrs. Kelly while getting off the train, that the brakeman should not have required her to debark at a place where the probability of injury was certainly much greater than would have been the case had the platform been used; and the court did not err in telling the jury that the fact that the train was late afforded no excuse to the railroad for failing to discharge its duty to the plaintiff. As we have said, the oral instruction imposed a higher degree of care than the law requires; but we think this error does not call for the reversal of the judgment, for the reason that the undisputed testimony shows a failure to use the degree of care which the law does require.

The testimony is conflicting as to the extent of Mrs. Kelly's injury, and on this phase of the case there was introduced by the appellant a letter from Mrs. Kelly, under date of April 14, 1920, in regard to a settlement of her claim for damages. In this letter she states that she had consulted three physicians to see if she was permanently crippled and she had waited before presenting her claim to see if she was, and that she had found that she was permanently crippled. She concludes this letter by saying: "I prefer to settle this without a suit, and have instructed my lawyer to wait until I hear from you, otherwise suit will be entered for $500 damages."

It is conceded by learned counsel for the railroad that this letter is an offer of compromise, and is therefore not binding on Mrs. Kelly; but it is insisted that it furnishes a statement of Mrs. Kelly's own estimate of her damages, made more than three months after her injury and after she had consulted three physicians and an attorney, and therefore furnishes conclusive evidence that the verdict for $3,000 is excessive. It is also true that the testimony shows that Mrs. Kelly has continued in her former employment—that of teaching—and that she has obtained an increase of salary since her injury.

We do not think, however, that this fact, nor the offer contained in the letter, is conclusive of the damage sustained. As is admitted, the letter was an offer of compromise, and the offer was not accepted. Mrs. Kelly was therefore in position to ask the jury to assess such damages as the testimony warranted. She testified that before her injury she had been able to do all her housework, and to walk to and from her school; but since her injury she has been compelled to hire much of the work done around her house, and had been compelled to buy a horse and buggy to drive to and from her school. Mrs. Kelly's knee was inflamed for some days, and she says she suffered much pain, which she stated had not entirely subsided at the time of the trial, that she limps slightly in walking, and has trouble going down steps and getting in a buggy. Two doctors testified that Mrs. Kelly had so torn the ligaments of the knee joint that her injury was a permanent one, and that there was no possibility of her recovering from her injury. One of the physicians, after expressing the opinion that Mrs. Kelly's injury was permanent, was asked: "What is likely to occur to her knee because of the rupture of this knee-joint?" He answered: "Well, the thickening of the synovial membrane will impair the service of the joint, the rupture of the ligaments losing control of the knee is likely to cause a looseness in the joint even to dislocation." A neighbor testified that she had never noticed Mrs. Kelly limp, and there was other testimony tending to contradict Mrs. Kelly about the extent of her suffering immediately after her injury. But these were questions of fact for the jury, and, while the jury dealt liberally with Mrs. Kelly, we do not think the verdict is excessive to the extent that it can be said to be unsupported by the testimony.

No prejudicial error appearing, the judgment is affirmed.