## CAIN v. CARLLEE.

Opinion delivered February 23, 1925.

1. ELECTIONS—PAYMENT OF POLL-TAX.—Persons who paid their poll taxes, but whose names were added to the tax lists by the county collector, and not by the county clerk, as required by Crawford & Moses' Dig., § 3738, had no right to vote at a primary election.

2. ELECTIONS—ERROR IN COUNTING VOTES—PREJUDICE.—Where, in an election contest, the court erred in counting improper votes, though it does not appear for whom they were cast, the error calls for a reversal; an affirmance being directed only where the judgment is correct under undisputed testimony, notwithstanding the error.

3. ELECTIONS—DIFFERENCE IN NAME OF VOTE.—A difference in the names of a voter as signed upon a ballot from that contained in the printed list of votes, under Crawford & Moses' Dig., § 3740, did not require that the vote be excluded; parol evidence being admissible in election contests to prove the identity.

Appeal from Woodruff Circuit Court, Southern District; *E. D. Robertson*, Judge; reversed.

*Roy D. Campbell*, for appellant.

All the votes cast by voters whose names were added to the tax books and whose poll taxes were paid after the tax books were certified to the collector for collection were illegal and void. C. & M. Digest, § 3738; 160 Ark. 275.

*Ross Mathis* and *J. F. Summers*, for appellee.

The court was correct in holding that where the name of a person does not appear on the tax books and the name is not certified by the clerk to the collector, yet

if he pays a poll tax within the time prescribed by law, he is a legal voter. That is the law. C. & M. Digest, § 3738 is merely directory in this respect. 97 Ark. 221; 92 Ark. 67; 129 Ark. 185.

Under the state of facts presented by this record, appellant presents nothing to consider. The burden is on him as the contestant to show that he received a majority of the legal votes cast. 32 Ark. 553; 148 Ark. 83.

SMITH, J. E. M. CarlLee and W. R. Cain, together with J. L. Bronte, were rival candidates for the Democratic nomination for county judge of Woodruff County in the primary election held in that county on August 12, 1924, and, in due time thereafter, Cain filed his complaint against his two opponents, contesting the nomination of CarlLee, who had been certified by the Democratic County Committee as the nominee.

The complaint, which was in proper form, alleged that, on the face of the original returns, CarlLee received 925 votes, Cain 910, and Bronte 170. That a recount, which was demanded by Cain, was granted, and a subcommittee of three, consisting of two partisans of CarlLee and one of Cain, recounted the votes and, as a result of this recount, the vote of CarlLee was announced as 847, Cain 815, and no votes was announced as having been cast for Bronte. This recount resulted in 173 votes having been thrown out by the subcommittee as illegal, for one reason or another, but, as stated, this recount showed that CarlLee had received a plurality of the votes cast, and he was duly certified as the nominee, and thereafter this contest was instituted.

The complaint contained many allegations of illegality and fraud. It was alleged that many persons, whose names were stated, had voted for CarlLee whose names were not on the legal list of voters which the clerk of the county court is required to furnish, under § 3740, C. & M. Digest, and that the poll-tax receipts of such parties were not attached to the ballots, as required by § 3777, C. & M. Digest. That, after the clerk had delivered the personal taxbooks to the collector, the

names of many persons were added to the taxbooks by the collector, and poll-tax receipts issued, and that this was done without such persons appearing before or being assessed by the county clerk, as required by § 3738, C. & M. Digest. The poll-tax receipts were issued to and votes cast by persons who were not otherwise entitled to vote. That persons had been permitted to vote in townships in which they did not reside. That votes had been received and counted as being cast by persons who did not, in fact, vote at all. That many persons had been permitted to vote on poll-tax receipts which had been paid for by other persons without the voter having requested that this be done, and without any agreement on the voter's part to pay for same. That ballots had been mutilated by the judges, and thrown out because of such mutilation. That, in counting the votes cast for Cain, many ballots were thrown out because of a difference in the initials or the spelling of a name. That in this number were included the wives of a number of electors who had paid the tax in their names and had given the names of their husbands, and *vice versa;* for instance, May Browning, the wife of Luke Browning, voted as May Browning, when she appeared on the list as Mrs. Luke Browning; but that the same rule was not applied in recounting the votes cast for CarlLee. That the ballots of certain electors whose names appeared on the published list of electors with the letter (C) opposite the name were thrown out on that account, although they were white men and were otherwise qualified to vote in the primary election. That a majority of the election officers were partisans of CarlLee, and, had the same rule been applied alike in passing upon the competency of the electors voting for both Cain and CarlLee, there would have been a difference in Cain's favor in the count of 50 votes. The complaint is specific in its allegations, but we only summarized them.

The answer filed by CarlLee contained a denial of all these allegations, and alleged that a number of illegal votes had been cast for Cain. The answer, in effect,

charged that fraud had been committed by election officers of which Cain was the beneficiary. The answer further alleged that the votes of six electors cast for CarlLee under the absent voters' law had been rejected. In reply to this last allegation, Cain admitted that these six votes had not been counted for CarlLee, but it was alleged that they should not have been so counted because of a failure on the part of the electors to properly comply with the absent voters' law.

Upon these charges and countercharges a great many witnesses were examined, and we have before us a transcript of more than six hundred pages.

After hearing all the testimony, the court made the general finding that CarlLee had received a majority of all the legal votes cast at the election, and was entitled to be declared the nominee.

The judgment of the court did not indicate the court's finding on any of the numerous questions of fact raised, and there was no finding as to the number of legal votes either candidate had received, so we do not know which, if any, of the contentions made by Cain were sustained by the court.

A motion for a new trial was filed by Cain, consisting of sixteen assignments of error, in which error was assigned in the refusal of the court to sustain each of the allegations contained in the complaint.

The tenth ground for a motion for a new trial reads as follows: "That the court erred in holding that the following parties, whose names were added to the list of those who had paid their poll taxes after the taxbooks had been certified by the clerk to the collector for collection, were legal voters, and counted the same as a part of the vote having been received by the defendant, E. M. CarlLee, when said voters had not complied with the laws of the State of Arkansas in order to get their said names added to the list of poll-tax voters, said parties being in the following townships and as follows, towit." Then follows a list of the names of such electors, under the name of the township in which they

had voted. And the tenth assignment of error concludes with the following statement: "The above list of names, being one hundred and four, substantially all of said parties having voted for the defendant, E. M. CarlLee, and neither of the said parties having caused their names to be added to the list of parties paying their poll taxes as required by the laws of the State of Arkansas, and particularly § 3738 of Crawford & Moses' Digest of the Statutes of Arkansas, it appearing from the ballots cast by said parties that approximately all of the number had cast their votes for the defendant, E. M. CarlLee."

The court overruled the motion for a new trial, and, in doing so, made the following finding of fact and declaration of law:

"This case turns upon the tenth ground alleged in plaintiff's motion for new trial, that 'said voters had not complied with the laws of the State of Arkansas in order to get their names added to the list of poll-tax voters.'

"It is conceded by counsel for contestant that they paid their poll tax within the time prescribed by law, § 3741, C. & M. Digest, the contention being made that the elector must first apply to the county clerk to have his name included in the list, under § 3738. In other words, he must be registered somewhere before he has the right to tender to the collector his poll tax.

"But art. 3, § 2, of our Constitution is to the effect 'nor shall any law be enacted whereby the right to vote at any election shall be made to depend upon the previous registration of the elector's name.' This provision annulled all requirements for registration under the reconstruction acts of 1868.

"There is no form even of registration required under Amendment No. 6 (Poll Tax Amendment), the only requirement being that the elector shall have 'paid his poll tax at the time of collecting taxes next preceding such election.' And § 3741 defines the meaning of the phrase 'time of collecting taxes.' If the collector accepted his money and issued a receipt or other evi-

dence of payment of poll tax, that is all the Constitution required.

"It appears here that the collector entered the names of these electors upon the tax books in the same manner that the clerk would have done, and thereby charged himself with the taxes in the same manner that the clerk would have done had the electors applied to him in the first instance and before the books were delivered. And that the clerk approved the action of the collector by including these names in the list he furnished the election commissioners, under § 3740, C. & M. Digest.

"It is held in 160 Ark. 269 that the collector cannot issue poll-tax receipts after the first Monday in July, but that holding was upon the facts in that case, and the question here was not before the court."

The court was in error in the application made of the decision of this court in the case of *Craig* v. *Sims,* 160 Ark. 269. We there construed § 3777, C. & M. Digest, and, in doing so, we said: "The statute does not give the county collector the power to assess a poll tax and deliver it to a person otherwise qualified to vote at an election. Hence he can have no such power. His power is only to collect a poll tax as provided."

In that case the contention of the contestant, that the votes of such persons were illegal and should not be counted, was upheld, but no relief was given him on that holding because he had not shown that the votes of such persons were cast for his opponent. We there said: "Conceding that these poll-tax receipts were illegally issued by the collector and purchased by the contestee or other persons for his benefit, still this falls short of establishing that the illegal votes were cast for the contestee. The ballots must have been cast by the persons holding the poll-tax receipts, and, in the absence of that showing, we have no means of knowing how they voted. The contestee might have furnished the receipts and intended them to vote for him. The votes may have been cast for the contestant, or for some other person."

In the instant case the showing was made that the questioned votes were cast for CarlLee, and, upon the authority of *Craig* v. *Sims, supra,* those votes should have been thrown out.

Section 3738, C. & M. Digest, provides how omitted names may be added to the taxbooks. These names can be added only by the county clerk, and, in adding such names, the clerk is required to assess a penalty of a dollar against each person so added, and, in addition, it is made the duty of the clerk "to assess any property held by said applicant, and which, for any reason, has been omitted from the tax books." And this section also imposes on the clerk the duty of certifying this supplemental assessment.

The purposes of these provisions are obvious and are two-fold: (1) to protect the public revenues, and (2) to prevent fraud in elections.

At any rate, this statute was upheld in *Craig* v. *Sims, supra,* and we perceive no reason for changing the construction there given it, and, upon the authority of that case, we hold that the court was in error in counting such illegal votes.

It is insisted, however, that, even though the court was in error in the ruling made, that fact does not call for the reversal of the judgment of the court below. But we cannot agree with counsel in this contention.

It is true that this court reverses only for error, and we would not reverse the judgment here if we could say that the judgment of the court below was correct under the undisputed evidence, notwithstanding this erroneous ruling; but we do not so find. We cannot affirm the judgment, in view of this erroneous ruling of the court, unless we do find that the judgment was correct under the undisputed testimony, notwithstanding this error.

In the case of *Arkadelphia Lumber Co.* v. *Whitted,* 81 Ark. 247, a syllabus reads: "Errors of the court in giving or refusing instructions were not prejudicial if the undisputed evidence shows that the judgment of the court was right upon the whole record."

That ruling was followed in the later cases of *St. L. I. M. & S. Ry. Co.* v. *Randle,* 85 Ark. 127; *Thompson* v. *Southern Lbr. Co.,* 113 Ark. 380; *Patterson* v. *Risher,* 143 Ark. 376; *New York Life Ins. Co.* v. *Adams,* 151 Ark. 123; *Davis* v. *Kelly,* 152 Ark. 151; *Gage* v. *Arkansas Central R. Co.,* 160 Ark. 402. In each of those cases the court refused to reverse the judgment of the court below, notwithstanding the erroneous declaration of law, but the reason assigned in each case was that the evidence was undisputed. The effect of those cases is that a reversal must be ordered where an erroneous declaration of law is made, unless the evidence is undisputed and the judgment is correct under the undisputed evidence, otherwise this court cannot know whether the error was prejudicial or not, and must assume that it was.

Counsel for CarlLee insists that the undisputed evidence shows that as many such votes were added to the taxbooks in the townships which Cain carried as were added in the townships which CarlLee had carried. There appears to have been 160 such names added to the taxbooks in the Central District of the county, and that this district voted largely for Cain, but there was no attempt to ascertain how these persons had voted, and, as was said in the case of *Craig* v. *Sims,* from which we have already quoted, this falls far short of showing that they voted for the contestant, whereas the showing was made by Cain that the voters which he challenged under this tenth assignment of error had, in fact, voted for CarlLee. Certainly, the court did not find that as many, or more, of such electors had voted for Cain, for the votes of these 160 electors were not inquired into. After examining the vote of one small township, counsel for CarlLee said: "Now, may it please the court, after we introduce, specifically, this ballot, it may be understood by counsel that the certified record of votes, together with the poll-books in Freeman, Wiville, Bullville, Hunter, Pumpkin Bend, Patterson City, Hilleman, Howell, Riverside, Revelle, with the understanding that they may be treated as in

the record, we will close." There followed the statement that this was all the evidence in the trial of the case.

It does not appear that the ballots cast in the townships named in which the 160 poll taxes were paid were canvassed, or any attempt made to ascertain how many of the 160 persons had voted, or for whom they had voted. We think it affirmatively appears that the court did not find that these 160 votes had been cast for Cain. The finding that they were cast for Cain could not have been made, for these ballots were not canvassed. We think there is at least such doubt about the facts that they cannot be treated as undisputed.

This appeal is from a trial at law, and the contestant was entitled to have the court pass on the questions of fact raised by the testimony, and there are many such questions in the case. We have no way of knowing how many, if any, of the contentions of Cain were sustained, but, as we understand the court's finding, he had come to the conclusion that the question raised in the tenth assignment of error was decisive of the contest. The court finds that "this case turns upon the tenth ground alleged in the plaintiff's motion for new trial, that 'said voters had not complied with the laws of the State of Arkansas in order to get their names added to the list of poll-tax voters.' "

In view of this finding of fact, we are unable to say that the court would have found for CarlLee, even though he had construed the case of *Craig* v. *Sims, supra*, as we do. Certainly, we do not think we should say the undisputed evidence shows this when this was only one of the numerous grounds of contest which Cain had offered testimony to sustain.

Appellant earnestly insists that, where there was a difference in the name of a voter as signed on the ballot from that contained in the printed list of voters certified by the clerk under § 3740, C. & M. Digest, the votes should not be counted. The holding of this court in the case of *Wilson* v. *Danley,* 165 Ark. 565, is against that

contention.   There the supporting affidavit of an elector in an election contest was made by Emmet Austin, and it appeared that no poll-tax receipt had been issued in that name to the affiant, who testified as a witness before the court.   He exhibited a receipt which had been issued to E. Y. Austin, and testified that, while his name was E. Y. Austin, his custom was to sign his name as Emmet Austin.   We held this testimony was competent and properly identified and qualified the affiant.

We therefore hold that parol testimony is competent to show the identity of an elector who voted under one name with that of a name appearing on the list of voters.   Indeed, it is provided by § 3742, C. & M. Digest, that, if the judges of election have any doubts as to the identity of any person being the person whose name appears upon the official list of those who have paid poll tax, they may take evidence by the oath of the person who presents himself claiming to be such person, or by other competent evidence, and the judges are empowered to administer oaths for that purpose.

For the error indicated the judgment of the court below will be reversed, and the cause will be remanded for a new trial.

HART, J. (dissenting.)   It may be stated at the outset that the findings of fact by a circuit judge in the trial of the contested election are as conclusive as the verdict of a jury upon conflicting evidence.   *Williams* v. *Buchanan*, 86 Ark. 259.

In this case there was a general finding of facts that E. M. CarlLee received a majority of the votes cast at the primary election for county judge which was contested by W. R. Cain.   In trying this issue no declaration of law was made or refused, and the court is therefore presumed to have acted upon correct views of legal principles applicable to the facts.   In other words, the case stands as though a properly instructed jury had returned a verdict for CarlLee.   *Blass* v. *Lee*, 55 Ark. 329, and *Blass* v. *Anderson*, 57 Ark. 483.

It is true that the court has held that findings of facts may be reduced to writing after the trial; but the court is not required to do so. In the case before us there was no request made by appellant to the court for a special finding of facts. The motion for a new trial filed by him was an assignment of errors alleged to have been committed at the trial, and was not a request that the findings of the court be reduced to writing and filed. *Buell* v. *Williams,* 127 Ark. 58.

Of course, the objection that the court's general findings of facts is not sustained by the evidence may be made by a motion for a new trial, no exceptions at the time the finding is made being necessary. In such a case, however, the only question on appeal is whether there was any evidence to support the finding of the court. *Greenspan* v. *Miller,* 111 Ark. 190.

The rule as to the court's conclusions of law is different. Where there are no exceptions to the court's conclusions of law, they cannot be reviewed here. *Dunnington* v. *Frick Co.,* 60 Ark. 250, and *Bluff City Lbr. Co.* v. *Floyd,* 70 Ark. 418.

Mere statements in a motion for a new trial that certain rulings were made by the court and excepted to by the party amount to nothing unless it is shown by the bill of exceptions that such rulings were made and excepted to. A motion for a new trial has never been used to incorporate anything into the record or any exceptions to anything done by the court. Its sole use is to assign errors already committed by the court, except for newly discovered evidence. *McKinley* v. *Broom,* 94 Ark. 147, and *Cravens* v. *State,* 95 Ark. 321.

We do not think that the ruling in *Craig* v. *Sims,* 160 Ark. 269, is conclusive on the point of law decided by the majority opinion. In that case it was held that persons not paying their poll tax after a certain day named in the statute were not entitled to vote in the primary election. The precise point was whether a poll tax could be paid subsequent to the first Monday in July just preceding the primary election in August of the same year.

The language used in an opinion should be construed as a whole with reference to the precise question under review. Isolated sentences may be frequently quoted from, in an opinion which would tend to give it a color not warranted by construing the opinion as a whole and with reference to the precise point under discussion and review.

The question under consideration in this case involves the construction of § 3738 of Crawford & Moses' Digest. That section provides for the addition of omitted names at any time after the assessment list has been delivered to the county clerk and placed in the hands of the collector before the Saturday next preceding the first Monday of July when the collector is required to make his final settlement with the county court. This section is a part of our general election laws, and it is more in accord with our previous decisions to hold that it is directory and not mandatory. For example in *Whittaker* v. *Walson*, 68 Ark. 555, it was held that payment of one's poll tax by another, not by request, but as a gift, in order to influence his vote without any offer on the voter's part to reimburse the other for such payment will not constitute him a competent voter, though otherwise qualified.

In its opinion the court referred to the fact that the Constitution of this State declares the qualifications of an elector and further provides that every such elector who shall exhibit a poll tax receipt, or other evidence that he has paid his poll tax at the time of collecting taxes next preceding such election, shall be allowed to vote at any election in the State of Arkansas. The court said that the object of the requirement of the receipt, or other evidence of the payment of the poll tax was to make the payment of the tax by the elector a condition upon which he shall be allowed to vote, and to prohibit him from voting until he does so. The court further said that the elector need not pay the tax in person, provided he in good faith authorized another to pay it for him, or ratified the act of another who had done so without having been pre-

viously authorized, and that the ratification must be accompanied with the promise to reimburse him.

It would seem that, if the court thought that section 3738 was mandatory, it would not have been necessary for the court to have held that another person could not pay the poll tax for an elector without being first requested to do so by such elector and without any expectation or promise of reimbursement. *Whittaker* v. *Watson,* 68 Ark. 555, and *Rhodes* v. *Driver,* 69 Ark. 501.

Art. 3, section 2, of our Constitution provides that no law shall be enacted whereby the right to vote at any election shall be made to depend upon any previous registration of the elector's name. If § 3738 is to be construed as mandatory, it would for all practical purposes be a registration statute.

Moreover Amendment No. 6 of our Constitution, after declaring the qualifications of an elector, provides that if such elector shall exhibit a poll tax receipt, or other evidence that he has paid his poll tax at the time of collecting taxes next preceding such election, he shall be allowed to vote at any election in the State of Arkansas. We think this provision should be construed liberally in order to carry out its purpose. The only prerequisite is that the poll tax be paid within the time prescribed by law.

It is no answer to this to say that we have held that the provisions of our Constitution do not apply to primary elections. As we have already seen, § 3738 is a part of our general election laws and is also made a part of our primary election laws. It will be presumed that the Legislature intended that this section in question should receive the same construction as it would receive in a contest under the general election laws of the State.

The writer is authorized to announce that Judge HUMPHREYS concurs in this dissent.